# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD T. BALSAVAGE, | : | |
|     Petitioner, | : | |
| | : | CIVIL ACTION |
| v. | : | NO. 11-5817 |
| | : | |
| JOHN E. WETZEL, et al., | : | |
|     Respondents. | : | |

**March _20_, 2013**                                                                                   **Anita B. Brody, J.**

## **MEMORANDUM**

Petitioner Richard T. Balsavage brings this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1] At the conclusion of a Gagnon II Hearing ("Gagnon sentencing hearing") to address Balsavage's probation violation, the presiding judge (the "Gagnon Judge") sentenced Balsavage to 3 ½ to 7 years of incarceration, followed by 42 years of probation. Balsavage appealed this sentence by filing a PCRA petition based on the fact that he had been denied his

---

[1] I referred the petition to the magistrate judge for a Report and Recommendation ("R & R") in accordance with 28 U.S.C. § 636(b)(1)(B). The following three claims were raised in the petition: (1) the trial court violated Balsavage's rights under the U.S. Constitution by increasing his original sentence after he petitioned for resentencing to exercise his right of allocution; (2) the trial court violated the Due Process Clause of the Fourteenth Amendment when it vindictively resentenced Balsavage; and (3) the trial court violated Balsavage's Fifth Amendment right against self-incrimination when the judge aggressively cross-examined Balsavage prior to imposing a sentence.
     In her R & R, the magistrate judge recommends that I deny Petitioner's habeas petition in its entirety without an evidentiary hearing. Balsavage filed timely objections to the R & R. Balsavage does not object to the magistrate judge's recommendation that I deny claims one and three of his petition. However, Balsavage objects to the magistrate judge's denial of his claim that he received a vindictive sentence in violation of his due process rights and the magistrate judge's recommendation that I deny the petition without an evidentiary hearing.
     Where a petition for a writ of habeas corpus has been referred to a magistrate judge for a R & R, the district court judge "shall make a de novo determination of those portions of the report . . . or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).
     I will adopt the R & R as it pertains to claims one and three of Balsavage's petition. However, I decline to adopt the magistrate judge's recommendation that I deny Balsavage's due process judicial vindictiveness claim.

right of allocution. The Gagnon Judge granted Balsavage's appeal and ordered a new Gagnon II Hearing ("Gagnon resentencing hearing"). At the Gagnon resentencing hearing, the Gagnon Judge resentenced Balsavage to 24 ½ to 49 years of imprisonment. The same judge presided over both the Gagnon sentencing and Gagnon resentencing hearings and relied upon the same facts and justifications to fashion both sentences. Despite this, the Gagnon Judge increased Balsavage's prison term sevenfold. To support this dramatic increase in Balsavage's sentence, the Gagnon Judge provided the following additional justification: "the fact that you appealed every decision and sentence this Court ever imposed on you." Respondent's Appendix ("App.") R213a at 9:14-15.

Balsavage properly argues that his increased sentence violates the Due Process Clause of the Fourteenth Amendment. *North Carolina v. Pearce*, 395 U.S. 711 (1969), and its progeny instructs that Balsavage's increased sentence violates due process because it is the product of clearly articulated judicial vindictiveness. As unpalatable as the underlying facts of this case are, the law must prevail. For the reasons explained below, I will conditionally grant the petition for writ of habeas corpus.

## I. BACKGROUND

On May 23, 2005, Balsavage pled guilty to eight counts of sexual abuse of children, in violation of 18 Pa. Cons. Stat. Ann. § 6312(d). App. R23a-34a. Specifically, Balsavage admitted to knowingly possessing eight photographs of his girlfriend's son, who was approximately two years old, posing in the nude or partially nude. App. R24a. On September 13, 2005, the Original Sentencing Judge sentenced Balsavage to a term of 9 to 23 months of incarceration on Count I, followed by a total of 7 years of probation for Counts II through VIII. App. R27a-35a.

On December 20, 2006, Balsavage completed his sentence on Count I and began serving his 7 year period of probation on Counts II through VIII. App. R39a. Shortly after his release, Balsavage violated his probation. On May 21, 2007, at the initial proceedings for his Gagnon II Hearing, Balsavage admitted to one violation of probation, for viewing pornography. App. R42a at 3:9-12. The Gagnon Judge was a different judge than the Original Sentencing Judge.

A few days later, on May 31, 2007, the Gagnon Judge conducted an extensive Gagnon sentencing hearing to determine the appropriate sentence for Balsavage in light of his probation violation. App. R42a at 3:8-12. The Gagnon Judge heard the most damning testimony from Balsavage's probation officer, his cellmate, two sex offender therapists, and a sex offender treatment specialist. App. R41a-60a. The Gagnon Judge relied upon a Treatment Summary that was prepared by the sex offender treatment specialist that summarized Balsavage's treatment while he was on probation. App. R65a-70a. This Treatment Summary was discussed at length during the hearing, and the Gagnon Judge admitted it into evidence. App. R54a-57a.

At the Gagnon sentencing hearing, the Gagnon Judge learned an abundance of information about Balsavage's sex offender treatment history, his mental disorders, and his capacity for rehabilitation. App. R41a-71a. The Gagnon Judge learned that Balsavage admitted to: (1) victimizing twelve additional minors and provided intimate details of these victimizations; (2) ongoing struggles with pedophilia fantasies to which he sometimes masturbated, and a sexual interest in urophilia and coprophilia; (3) an addiction to marijuana and alcohol that began at age twelve; and (4) fantasies about doing something like the Amish schoolhouse murders. *Id*. Several witnesses relayed these admissions to the Gagnon Judge, and the Treatment Summary explicitly detailed each of Balsavage's admissions. *Id.* After learning this information, the

Gagnon Judge concluded that Balsavage is "not amenable to treatment." App. R58a at 66:11, 67:5-6.

In closing, the Commonwealth argued to the Gagnon Judge that the testimony of the witnesses led to the conclusion "that [Balsavage] is at a high risk of reoffending, that he is a danger to the community, and that at this time total confinement is necessary . . . ." App. R59a at 69:3-9. Based on the evidence presented of Balsavage's ongoing deviant thoughts, which he continued to act upon, the Gagnon Judge concluded: "[O]nly total confinement for a lengthy period of time will afford the community at large any hope of real protection from [Balsavage's] predatory behavior. And I believe that lengthy incarceration followed by lengthy supervision is also necessary to make sure that Mr. Balsavage continues to comply with treatment and to conform his behavior to societal norms." *Id.* at 71:10-19. The Gagnon Judge substantially increased Balsavage's original sentence of 9 to 23 months of imprisonment, followed by 7 years of probation, and sentenced Balsavage to 3 ½ to 7 years of imprisonment, followed by 42 years of probation. App. R59a. The Gagnon Judge emphasized that this was a "very lengthy sentence. It may for Mr. Balsavage end up being a life sentence, but at least until he's a very elderly man." App. R60a at 73:25-74:3. The Gagnon Judge justified this lengthy increase based on the need to protect minor children, protect the community, and rehabilitate Balsavage to prevent him from reoffending. App. 59a-60a.

Balsavage appealed and the Pennsylvania Superior Court, without commenting on the propriety of the sentence, affirmed the sentence on March 12, 2008. App. R163a-167a. On August 4, 2008, Balsavage filed for relief under the Post Conviction Relief Act ("PCRA"), 42 Pa. Const. Stat. Ann. §§ 9541-46. App. R168a-201a. In his PCRA petition, Balsavage alleged that he was denied his right of allocution during the May 31, 2007 Gagnon sentencing hearing.

App. R205a-209a. On April 17, 2009, the Gagnon Judge granted Balsavage's PCRA petition based solely on the denial of the right to allocution and ordered a Gagnon resentencing hearing. App. R203a.

On May 27, 2009, the Gagnon Judge held the Gagnon resentencing hearing. While the Gagnon Judge acknowledged that he had reviewed an amended presentence investigation report,[2] the Gagnon Judge himself noted that "[t]here's very little that – virtually nothing that's new or different from the time of the prior sentencing . . . . Obviously, nothing has changed except Mr. Balsavage has been incarcerated this entire period of time." App. R211a-212a at 4:20-5:1. At the beginning of the Gagnon resentencing hearing, Balsavage addressed the court and stated that he took full responsibility for his wrongs and was truly sorry for what he had done. App. R211a at 3:21-4:14. Following this statement, the Gagnon Judge proceeded to question Balsavage, who was not under oath, about information that had been given to the Gagnon Judge at Balsavage's original Gagnon sentencing hearing on May 31, 2007. *See* App. R212a-213a. Specifically, the Gagnon Judge asked Balsavage questions about his admissions to his sex offender treatment specialist contained in the Treatment Summary and about the allegation that Balsavage had fantasies about the Amish schoolhouse murders.[3] App. R212a. No witnesses testified at the Gagnon resentencing hearing, no testimony under oath was given, and no exhibits were considered. Moreover, no new, or newly discovered, information was presented at the Gagnon resentencing hearing.

---

[2] Neither the state court record nor the Respondent's Appendix includes a copy of the presentence investigation report or the amended presentence investigation report.

[3] The Gagnon Judge also questioned Balsavage about the fact that he had not been deemed a sexually violent predator and therefore, was only required to register his current address with the state police for ten years. App. R212a. This was not new, or newly discovered, information. Rather, the finding had been made by the Original Sentencing Judge and memorialized in an order of the court dated September 13, 2005. App. R36a.

5

At the conclusion of the Gagnon resentencing hearing, the Gagnon Judge repeated what he had said at the original Gagnon sentencing hearing, that Balsavage's probation violation merited "a very lengthy resentencing." App. R213a at 10:4-6. As justification for this lengthy sentence, the Gagnon Judge explicitly relied on "the fact that you appealed every decision and sentence this Court ever imposed on you." *Id.* at 9:14-15. Among the other factors the Gagnon Judge considered were Balsavage's history, his high risk of recidivism,[4] his lack of remorse, and his inability to comply with probation, all of which led the Gagnon Judge to conclude that the maximum sentence was "absolutely required to protect the most vulnerable members of our community." App. R212a-213a. The Gagnon Judge then sentenced Balsavage to 24 ½ to 49 years of imprisonment, a term of imprisonment that was seven times longer than Balsavage received at the original Gagnon sentencing hearing. As justification for this new "lengthy sentence" the Gagnon Judge told Balsavage: "It is, obviously, this Court's intention to keep you in custody and away from any minor children and to protect the members of the community for as long a period of the time as is available to this Court." App. R213a at 12:12-16.

Because the Gagnon Judge resentenced Balsavage to a term outside the guidelines adopted by the Pennsylvania Commission on Sentencing, the Gagnon Judge had to "provide a contemporaneous written statement of the reason or reasons for the deviation from the guidelines to the commission." 42 Pa. Cons. Stat. Ann. § 9721(b). In his § 9721(b) statement, the Gagnon Judge explained that he resentenced Balsavage outside the guidelines for "the protection of the public," to address the "gravity of the offenses," and "the rehabilitative needs, or in this case the prospect of rehabilitation, of the Defendant." App. R233a. The Gagnon Judge based his sentencing decision on Balsavage's failure to comply with probation and the information he had

---

[4] Balsavage's high risk of recidivism was discussed at the original Gagnon sentencing hearing and addressed in the Treatment Summary. *See* App. R55a at 56:1-21, R59a at 69:3-5, R69a, R212a at 8:14-16.

learned from the Treatment Summary; specifically, Balsavage's admissions that he had twelve other victims and struggled with pedophilia fantasies to which he sometimes masturbated, as well as the report's conclusion that Balsavage had a high risk of recidivism. App. R233a-234a. The Gagnon Judge concluded that Balsavage needed the maximum period of incarceration in order to protect minors in the community. App. R234a. In sum, the Gagnon Judge used the same facts and justifications relied upon at the original Gagnon sentencing hearing to increase Balsavage's period of incarceration sevenfold.

Balsavage filed a Post-Sentence Motion to Modify Sentence, which was denied by the Gagnon Judge on June 15, 2009. App. R220a-232a. Balsavage then appealed his sentence. App. R235a. On May 13, 2010, the Pennsylvania Superior Court affirmed Balsavage's judgment of sentence without addressing Balsavage's claim that his sentence violated his due process rights as articulated in *North Carolina v. Pearce*, 395 U.S. 711 (1969). App.R248a-249a, R308a-317a. Balsavage filed a Petition for Allowance of Appeal. App. R318a-355a. On September 27, 2010, the Supreme Court of Pennsylvania denied his Petition for Allowance of Appeal. App. R357a.

## II. AEDPA DEFERENCE

"The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") restricts the circumstances under which a federal habeas court may grant relief to a state prisoner whose claim has already been 'adjudicated on the merits in State court.'" *Johnson v. Williams*, 133 S. Ct. 1088, 1091 (2013) (quoting 28 U.S.C. § 2254(d)). A federal habeas court may not grant relief on any claim that has been "adjudicated on the merits in State court," unless the adjudication:

>(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Third Circuit has interpreted these statutory provisions as a three-step inquiry, looking first to the "contrary to" clause, second to the "unreasonable application" clause, and finally to the "unreasonable determination of the facts" clause. *Blystone v. Horn*, 664 F.3d 397, 417 (3d Cir. 2011). For these purposes, "clearly established federal law" means "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).

A state court decision is contrary to clearly established federal law under the first clause of § 2254(d)(1) when the state court "applies a rule that contradicts the governing law set forth" in a Supreme Court decision, or the state court "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a different result from [the Supreme Court's] precedent." *Williams v. Taylor*, 529 U.S. 362, 406 (2000). "AEDPA permits *de novo* review in those rare cases when a state court decides a federal claim in a way that is 'contrary to' clearly established Supreme Court precedent." *Johnson*, 133 S. Ct. at 1097. When the state court correctly identifies the governing federal precedent but applies it in a debatable manner, the "contrary to" clause is not violated. *See Williams*, 529 U.S. at 405-06.

A state court decision involves an unreasonable application of clearly established federal law when "the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The habeas petitioner must show that the state court decision was objectively

unreasonable and not merely incorrect. *Williams*, 529 U.S. at 410-11; *Blystone*, 664 F.3d at 417. "[S]o long as 'fairminded jurists could disagree' on the correctness of the state court's decision," the state court's application of federal law cannot be considered unreasonable. *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Id.* at 786-87 (citations omitted). "The meaning of 'unreasonable' can depend in part on the specificity of the relevant legal rule. . . . The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations." *Yarborough*, 541 U.S. at 653.

Finally, a state court decision rests on an unreasonable determination of the facts only if the state court's findings of fact are objectively unreasonable in light of the evidence presented in state court at the time of the state court's adjudication. *Blystone*, 664 F.3d at 418. In general, the state court's findings of fact are presumed to be correct, but the petitioner may rebut this presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

All three of these § 2254(d) inquiries—whether the state court decision is contrary to federal law, an unreasonable application of federal law, or based on an unreasonable determination of the facts—apply only when the petitioner's federal claim has been "adjudicated on the merits in State court." "Because the requirements of § 2254(d) are difficult to meet, it is important whether a federal claim was 'adjudicated on the merits in State court . . . .'" *Johnson*,

9

133 S. Ct. at 1091. If a claim has not been adjudicated on the merits, a federal court will apply *de novo* review to pure legal questions and to mixed questions of law and fact. *Simmons v. Beard*, 590 F.3d 223, 231 (3d Cir. 2009).

In *Johnson*, the Supreme Court tackled the issue of whether a case had been adjudicated on merits "when a defendant convicted in state court attempts to raise a federal claim, either on direct appeal or in a collateral state court proceeding, and a state court rules against the defendant and issues an opinion that addresses some issues but does not expressly address the federal claim in question." 133 S. Ct. at 1091. In this circumstance, the Supreme Court held that the federal claim is presumed to have been adjudicated on the merits, unless the presumption is adequately rebutted. *Id.* The Ninth Circuit had held that petitioner's Sixth Amendment claim had not been adjudicated on the merits because the state court had overlooked it. *Id.* at 1094. While the Supreme Court disagreed with the Ninth Circuit's conclusion that petitioner's claim had not been adjudicated on the merits, it affirmed that the presumption of merits adjudication is successfully rebutted where it is established that a state court has overlooked the federal claim in question. *Id.* at 1097-98. As the Supreme Court explained:

> A judgment is normally said to have been rendered "on the merits" only if it was delivered after the court ... heard and *evaluated* the evidence and the parties' substantive arguments. And as used in this context, the word "merits" is defined as *the intrinsic rights and wrongs of a case* as determined by *matters of substance*, in distinction from matters of form. If a federal claim is rejected as a result of sheer inadvertence, it has not been evaluated based on the intrinsic right and wrong of the matter.

*Id.* (citations omitted) (internal quotation marks omitted).

In *Johnson*, the petitioner argued to the California Court of Appeal that the discharge of a juror violated both the Sixth Amendment and the California Penal Code § 1089, "which allows a California trial judge to dismiss a juror who 'upon . . . good cause shown to the court is found to

be unable to perform his or her duty.'" *Id.* at 1093 (quoting Cal. Penal Code Ann. § 1089 (West 2004)). Looking at the facts of the case, the Supreme Court held that the Sixth Amendment claim had been adjudicated on the merits because, despite the Ninth Circuit's finding to the contrary, the state court had not overlooked the petitioner's Sixth Amendment claim. *Id.* at 1097-98.

The Supreme Court relied on several facts to conclude that the Sixth Amendment claim had not been overlooked. *Id.* at 1098-99. First, the Supreme Court noted that the California Court of Appeal had focused considerably on a California Supreme Court case that "acknowledged the need to protect the sanctity of jury deliberations," and included a lengthy discussion of three United States Court of Appeals cases addressing the Sixth Amendment right to a jury trial. *Id.* at 1098 (internal quotation marks omitted). While the California Supreme Court declined to follow these federal cases, and did not expressly decide a federal constitutional question, the Supreme Court found that its discussion of these cases "shows that the California Supreme Court understood itself to be deciding a question with federal constitutional dimensions." *Id.* Additionally, the Supreme Court noted that the petitioner's § 1089 claim and Sixth Amendment claim were so similar that it was unlikely that the state court had overlooked the federal claim. *Id.* Thus, the Supreme Court found it "difficult to imagine" that the California Court of Appeal could read the California Supreme Court case and rule on the § 1089 claim "without realizing that such situations also bear on the federal constitutional right to a fair trial." *Id.* at 1098-99. Furthermore, the California Court of Appeal had quoted the Supreme Court's definition of "impartiality" from *United States v. Wood*, 299 U.S. 123, 145-46 (1936). *Id.* at 1099. This also confirmed the Supreme Court's determination that the state court "was well aware" that the jury issue raised by the petitioner implicated federal law. *Id.* Lastly, the

Supreme Court found that the petitioner's litigation strategy supported the conclusion that the claim was adjudicated on the merits. *Id.* The petitioner had treated her state and federal claims as interchangeable throughout the state court proceedings; thus, it was "hardly surprising that the state courts did so as well." *Id.*

### III. WHETHER ADEPA DEFERENCE APPLIES

Balsavage raised four separate claims in his brief filed with the Superior Court of Pennsylvania ("Superior Court"). App. R237a. One of Balsavage's claims exclusively addressed the argument that his increased sentence violated his due process rights because it was judicially vindictive. App. R248a-249a. Despite this clear reference to a violation of his rights under the Constitution of the United States, the Superior Court overlooked his Fourteenth Amendment due process claim.

In its decision, the Superior Court never referred to any opinion of the United States Supreme Court, or any other federal court, nor did it refer to any state or federal constitutional claims. *See* App. R308a-317a. Although Balsavage relied on both state law and federal constitutional law to argue that his increased sentence was illegal, the Superior Court failed to differentiate between these claims and treated both claims as a state law claim that the trial court abused its discretion in selecting Balsavage's sentence. App. R312a-315a. The Superior Court explained the law to apply as follows: [W]e decide only whether the sentencing court abused its discretion in selecting a penalty. . . . Absent an abuse of discretion, we leave the sentence undisturbed." App. R312a. The Superior Court's entire discussion of the legal standard revolved around three state law cases, none of which involved a defendant who had been resentenced. *See Commonwealth v. Walls*, 926 A.2d 957 (Pa. 2007); *Commonwealth v. Tirado*, 870 A.2d 362 (Pa. Super. Ct. 2005); *Commonwealth v. Mouzon*, 828 A.2d 1126 (Pa. Super. Ct.

2003). Rather, each of the cited cases addressed a situation in which the defendant had received an initial lengthy sentence outside the sentencing guidelines. *Walls*, 926 A.2d at 562; *Tirado*, 870 A.2d at 367; *Mouzon*, 828 A.2d at 1128. In each of these cases, the legal issue was whether the sentencing court had abused its discretion by imposing an excessive sentence upon the defendant. *Walls*, 926 A.2d at 564-65; *Tirado*, 870 A.2d at 365-66; *Mouzon*, 828 A.2d at 1128. None of these state cases mentioned a due process claim, any other federal constitutional legal claims, or any federal cases that discussed such claims. Analyzing Balsavage's claim through this legal framework, the Superior Court concluded:

> [T]he court considered its need to protect the public, the gravity of Balsavage's offense and his rehabilitative needs. . . . The sentencing judge, therefore, thoroughly explained its rationale and its concerns, which led to the imposition of the sentence it deemed appropriate. We find no abuse of discretion and will not disturb the sentence imposed.

App. R314a-315a.

Unlike in *Johnson*, the Superior Court's opinion failed to cite to any decision of the United States Supreme Court. Moreover, in both his brief to the Superior Court and Petition for Allowance of Appeal, Balsavage raised a stand-alone due process claim. App. R248a-249a, 333a-334a. Thus, Balsavage did not treat his due process claim and state law claim as interchangeable. In contrast to *Johnson*, the state law cases relied upon by the Superior Court in its discussion of the merits of Balsavage's claim did not refer to a due process claim, any other federal constitutional legal claims, or any federal cases that discussed such claims.[5]

---

[5] In Pennsylvania, a criminal defendant does not have an automatic right to appeal the discretionary aspects of his sentence. *Commonwealth v. Tuladziecki*, 522 A.2d 17, 19-20 (Pa. 1987). Before the Superior Court reached the merits of the claims related to Balsavage's increased sentence, it first addressed whether it would entertain them because it viewed them as challenges to the discretionary aspects of Balsavage's sentence. App. R310a-312a. In deciding whether to grant Balsavage's Petition for Allowance of Appeal, the Superior Court cited to *Commonwealth v. Robinson*, 931 A.2d 15 (Pa. Super. Ct. 2007), in which it was held that a claim of judicial vindictiveness is a challenge to the discretionary

13

The Superior Court ignored the fact that Balsavage was not complaining about an excessive initial sentence; rather, he was challenging an increased sentence that was imposed upon resentencing after he exercised his statutory right to appeal. It is clearly established that a court violates due process when it acts vindictively and imposes a harsher sentence upon a defendant at resentencing to punish the defendant for exercising his or her statutory right to an appeal. *Pearce*, 395 U.S. at 723-25; *United States v. Goodwin*, 457 U.S. 368, 372 (1982). A presumption of judicial vindictiveness applies in circumstances in which there is a "reasonable likelihood" that the increased sentence is the result of actual vindictiveness. *Alabama v. Smith*, 490 U.S. 794, 799 (1989). Where there is no such reasonable likelihood, the defendant bears the burden of proving actual vindictiveness on the part of the trial court in order to succeed on a due process claim. *Id.* at 799-800. The Superior Court overlooked Balsavage's due process claim and failed to examine whether the presumption of vindictiveness applied or whether Balsavage had proved actual vindictiveness. Therefore, Balsavage's due process claim was not adjudicated on the merits and *de novo* review of his claim applies. Alternatively, even if it is possible to conclude that Balsavage's claim was adjudicated on the merits, *de novo* review is still appropriate because the state court decision is contrary to clearly established federal law, as determined by the Supreme Court of the United States.[6]

---

aspects of a defendant's sentence and thus requires the defendant to petition for allowance of appeal. App. R310a.

    The Superior Court cited *Robinson* once, without any discussion of the decision, to support its assertion that Balsavage needed permission to appeal. *Id.* Admittedly, in *Robinson*, the Pennsylvania Supreme Court "recognize[d] that a claim of judicial vindictiveness implicates due process concerns," and cited to *Pearce*. *Robinson*, 931 A.2d at 22. However, this does not lead to the conclusion that Balsavage's due process claim was not overlooked by the Superior Court. It cannot be inferred from the Superior Court's single citation to *Robinson*, for the proposition that Balsavage needed to receive the court's permission to appeal before the court could reach the merits of his claim, that the court was aware of the federal constitutional dimensions of Balsavage's claim, especially given that the court failed to mention *Robinson* in its discussion of the merits of his claim.

[6] Given the facts of this case, even if Balsavage's petition were not entitled to *de novo* review, Balsavage's petition could still be granted under § 2254(d)(1)'s deferential standard of review because the

## IV. DISCUSSION

"To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort. . . . For while an individual certainly may be penalized for violating the law, he just as certainly may not be punished for exercising a protected statutory or constitutional right." *Goodwin*, 457 U.S. at 372 (internal quotation marks omitted). In *Pearce*, the Supreme Court explained that constitutional due process "requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial." 395 U.S. at 725. In order to assure the absence of such vindictiveness, the Supreme Court held that "whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear." *Id.* at 726. Thus, *Pearce* created a rebuttable presumption of vindictiveness. *Goodwin*, 457 U.S. at 374. Although *Pearce* involved a resentencing after a new trial, the *Pearce* rule also applies to resentencing after a sentence is vacated on appeal. *See United States v. DiFrancesco*, 449 U.S. 117, 135-36 (1980) ("While *Pearce* dealt with the imposition of a new sentence after retrial rather than . . . after appeal, that difference is no more than a conceptual nicety." (internal quotation marks omitted)); *Kelly v. Neubert*, 898 F.2d 15, 16 (3d Cir. 1990) ("*Pearce* creates a prophylactic rule requiring the trial court to show affirmatively on the record non-retaliatory reasons for increasing a sentence after a successful appeal of the original sentence.").[7]

---

Superior Court unreasonably applied clearly established federal law, as determined by the Supreme Court of the United States. Additionally, the petition could succeed under § 2254(d)(2) because the Superior Court unreasonably determined the facts in light of the evidence presented when it ignored the Gagnon Judge's comment that one justification for Balsavage's increased sentence was "the fact that you appealed every decision and sentence this Court ever imposed on you." App. R213a at 9:14-15.

[7] Other Courts of Appeals agree that the *Pearce* rule applies to resentencing after a sentence is vacated on appeal. *See Nulph v. Cook*, 333 F.3d 1052, 1057 (9th Cir. 2003); *United States v. Evans*, 314 F.3d 329, 333-34 (8th Cir. 2002); *United States v. Jackson*, 181 F.3d 740, 744 (6th Cir. 1999); *United States v.*

15

Since *Pearce*, the Supreme Court has limited the application of the presumption to circumstances "in which there is a reasonable likelihood that the increase in sentence is the product of actual vindictiveness on the part of the sentencing authority." *Smith*, 490 U.S. at 799 (citation omitted) (internal quotation marks omitted). If the presumption of vindictiveness applies, it may be rebutted "only by objective information in the record justifying the increased sentence." *Goodwin*, 457 U.S. at 374. Such objective information must be based upon conduct of the defendant or events occurring after the first sentencing, or newly discovered conduct or events that occurred prior to the sentencing. *See Texas v. McCullough*, 475 U.S. 134, 141-44 (1986). Relevant conduct or events are those that throw "new light upon the defendant's life, health, habits, conduct, and mental and moral propensities." *Pearce*, 395 U.S. at 723.

Even if the presumption of vindictiveness does not apply, a defendant can establish a due process violation by proving actual vindictiveness. *Smith*, 490 U.S. at 799-800. It is "exceedingly difficult" to prove actual vindictiveness. *United States v. Paramo*, 998 F.2d 1212, 1221 (3d Cir. 1993) (internal quotation marks omitted). To succeed on a claim of actual vindictiveness, a defendant must "prove objectively" that a court's action "was motivated by a desire to punish him for doing something that the law plainly allowed him to do." *Goodwin*, 457 U.S. at 384 (discussing actual vindictiveness in the context of a claim of prosecutorial vindictiveness); *United States v. Stanfield*, 360 F.3d 1346, 1362 (D.C. Cir. 2004) (applying *Goodwin* standard of proof for actual vindictiveness to a claim of judicial vindictiveness). Put another way, the objective evidence must establish that the court's action was "solely" to punish

---

*Vontsteen*, 950 F.2d 1086, 1089 n.2 (5th Cir. 1992); *United States v. Mancari*, 914 F.2d 1014, 1018 (7th Cir. 1990); *United States v. Raimondo*, 721 F.2d 476, 478 (4th Cir. 1983); *Robinson v. Scully*, 690 F.2d 21, 24 (2d Cir. 1982). This interpretation of the *Pearce* rule reflects the Court's view that "[w]hile sentencing discretion permits consideration of a wide range of information relevant to the assessment of punishment . . . it must not be exercised with the purpose of punishing a successful appeal." *Smith*, 490 U.S. at 798.

the defendant for exercising a guaranteed legal right.  *See Goodwin*, 457 U.S. at 380 n.12; *see also Paramo*, 998 F.2d at 1221 ("To prove actual vindictiveness, [the defendant] must show that the prosecutor withheld a 5K1.1 motion solely to penalize him for exercising his right to trial.").

This case presents the rare situation in which it is not necessary to determine whether the presumption of vindictiveness applies because it is clear that the petitioner has met the "exceedingly difficult" burden of proving actual vindictiveness.  Here, the Gagnon Judge actually stated, on the record at the resentencing hearing, that the increased sentence given to Balsavage was due to "the fact that you appealed every decision and sentence this Court ever imposed on you."  App. R213a at 9:14-15.  While the Gagnon Judge did not outright state that this was the only reason he was increasing Balsavage's sentence, the record reveals this to be the case.

According to the Supreme Court, only objective information placed on the record can justify an increased sentence.  *See Goodwin*, 457 U.S. at 374.  The Supreme Court has limited its definition of objective information to new information that post-dates the original sentencing or newly discovered information pre-dating the original sentencing.  *See McCullough*, 475 U.S. at 141-44.  The record reflects that Balsavage's Gagnon resentencing hearing was devoid of any new, or newly discovered, information.  As the Superior Court recognized, only the following occurred at the Gagnon resentencing hearing: "Balsavage exercised his right of allocution.  Balsavage then answered questions posed to him by the sentencing judge wherein he simply confirmed the truth of certain matters found in the reports prepared during the course of his sex offender therapy."  App. R315a.  Despite the lack of any new information, the Gagnon Judge changed Balsavage's sentence from 3 ½ to 7 years of imprisonment, followed by 42 years of probation to 24 ½ to 49 years of imprisonment.  At the original Gagnon sentencing hearing, the

17

Gagnon Judge justified his sentence on the need to protect minor children and the community, and the need to rehabilitate Balsavage to prevent him from reoffending. The Gagnon Judge relied primarily on the same justifications to increase Balsavage's sentence sevenfold. Clearly none of the Gagnon Judge's justifications for the increased sentence were supported by objective information in the record because no objective information was presented.[8] When all of the pretextual reasons for increasing Balsavage's sentence are eliminated, only one of the Gagnon Judge's justifications for this extraordinary increase in sentence remains: to punish Balsavage for exercising his statutory right to appeal. The enormous disparity between the sentences Balsavage received before and after his appeal bolsters this conclusion. Balsavage has objectively proven that the Gagnon Judge's sole reason for increasing his sentence was to penalize him for exercising a guaranteed legal right. Thus, he has proven actual vindictiveness and established that his increased sentence violates due process.

Alternatively, even if Balsavage had not proven actual vindictiveness, a due process violation could still be established through application of the presumption of vindictiveness. The presumption of vindictiveness applies in this case because the Gagnon Judge increased

---

[8] At the allocution, Balsavage apologized for his crime. Despite Balsavage's apology, the Gagnon Judge did not believe that Balsavage was remorseful. The Gagnon Judge listed Balsavage's lack of remorse as one justification for the increased sentence. App. R212a-213a. The Gagnon Judge may not rely on this justification to support his decision to increase Balsavage's sentence because it is not based on objective information. "[T]he sentencing court's subjective discrediting of [a] defendant's . . . statements at allocution . . . d[oes] not constitute either objective information newly acquired by the court following the original sentencing or sentence-enhancing occurrences post-dating the original sentencing." *United States v. Resendez-Mendez*, 251 F.3d 514, 518 (5th Cir. 2001). As explained by the Fifth Circuit:

> [R]eversal of the presumption of vindictiveness and justification of an increased sentence are wholly dependent on the sentencing court's specific verbalization of either new information or subsequent occurrences that objectively support imposition of an enhanced sentence on remand. . . . [T]he sentencer's subjective evaluation of the sincerity of defendant's allocution is neither relevant to the question of vindictiveness nor probative in dispelling it.

*Id.* at 519.

18

Balsavage's sentence sevenfold after Balsavage successfully appealed the sentence he received at the original Gagnon sentencing hearing.[9] As previously discussed, no objective information was presented on the record to justify the Gagnon Judge's decision to increase Balsavage's

---

[9] A presumption of vindictiveness applies to circumstances "in which there is a reasonable likelihood that the increase in sentence is the product of actual vindictiveness on the part of the sentencing authority." *Smith*, 490 U.S. at 799 (citation omitted) (internal quotation marks omitted). "[V]indictiveness of a sentencing judge is the evil the Court sought to prevent rather than simply enlarged sentences after a new trial. . . . Accordingly, in each case, we look to the need, under the circumstances, to guard against vindictiveness in the resentencing process," in order to determine whether the presumption applies. *McCullough*, 475 U.S. at 138 (internal quotation marks omitted).

In *McCullough*, the defendant had been sentenced after trial by a jury. 475 U.S. at 136. The trial judge then granted the defendant's motion for a new trial on the basis of prosecutorial misconduct. *Id.* The defendant was retried before a jury and found guilty. *Id.* After electing to be sentenced by the judge, the defendant received a much harsher sentence. *Id.*

Based on the facts in *McCullough*, the Supreme Court held that the presumption of vindictiveness did not apply. 475 U.S. at 138. The Supreme Court found the presumption inapplicable because the trial judge herself had granted the motion for a new trial. *Id.* at 138-39. The Supreme Court concluded that the grant of the motion did not suggest vindictiveness on the part of the judge because "[u]nlike the judge who has been reversed, the trial judge here had no motivation to engage in self-vindication." *Id.* (internal quotation marks omitted). The Supreme Court concluded that it would be inappropriate to "[p]resum[e] vindictiveness on this basis alone," and "decline[d] to adopt the view that the judicial temperament of our Nation's trial judges will suddenly change upon the filing of a successful post-trial motion." *Id.* at 139. The Supreme Court explained, "The presumption of *Pearce* does not apply in situations where the possibility of vindictiveness is this speculative, particularly since the presumption may often 'operate in the absence of any proof of an improper motive and thus . . . block a legitimate response to criminal conduct.'" *Id.* (quoting *Goodwin*, 457 U.S. at 373). Additionally, the Supreme Court found that presumption of vindictiveness could not apply because the defendant had elected to be sentenced by the judge rather than the jury, which established that the defendant had no apprehension of vindictiveness. *Id.*

As in *McCullough*, the Gagnon Judge granted Balsavage the relief he requested and then resentenced him to an increased sentence. This, however, is the only similarity between these cases. In contrast to *McCullough*, the possibility of vindictiveness is not speculative in this case. There is actual proof of an improper motive for the increased sentence. The Gagnon Judge stated on the record that one justification for the increased sentence was "the fact that you appealed every decision and sentence this Court ever imposed on you." App. R213a at 9:14-15. Additionally, although the Third Circuit has not read *McCullough* as broadly as "to indicate that the Pearce presumption is inapplicable whenever the judge who imposed the second sentence had no reason to indulge in self-vindication," *Rock v. Zimmerman*, 959 F.2d 1237, 1257 n.16 (3d Cir. 1992) (en banc), *overruled on other grounds* by *Brecht v. Abrahamson,* 507 U.S. 619 (1993), even if it had, the Gagnon Judge had reason to indulge in self-vindication. Unlike in *McCullough*, Balsavage attacked the Gagnon Judge's decision to deny him the right of allocution, which is quite different than attacking a trial based on the misconduct of the prosecutor. Furthermore, apprehension of vindictiveness is present in this case because Balsavage had no choice but to be sentenced by the Gagnon Judge who presided at the original Gagnon sentencing hearing and then granted his appeal. Moreover, the procedural posture of each case is different. In *McCullough*, the defendant succeeded on a post-trial motion; here, Balsavage succeeded on a PCRA petition. The significant distinctions between the facts here and in *McCullough* account for the different conclusion reached: The presumption of vindictiveness applies in this case.

sentence sevenfold. Thus, the Gagnon Judge failed to rebut the presumption of vindictiveness, and the increased sentence violates due process.

## V. CONCLUSION

For the reasons set forth above, I will conditionally grant Balsavage's petition for writ of habeas corpus. Accordingly, a writ of habeas corpus will issue unless, within ninety days of the date of the accompanying order, Balsavage is resentenced to a term not to exceed that originally imposed on May 31, 2007.[10]

s/Anita B. Brody

_____
ANITA B. BRODY, J.

Copies **VIA ECF** on _____ to:    Copies **MAILED** on _____ to:

---

[10] Where the Third Circuit has held that an increased sentence after appeal violates due process because it is the product of judicial vindictiveness, the court has vacated the increased sentence and remanded the matter for resentencing to a term not to exceed the sentence originally imposed prior to the appeal. *United States v. Carrasquillo*, 732 F.2d 1160, 1166 (3d Cir. 1984); *Jacobs v. Redman*, 616 F.2d 1251, 1259 (3d Cir. 1980).